IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK SULLIVAN | ) | CASE NO.: 2:23-CV-03174 |
| 3758 Northwood Road | ) | |
| University Heights, Ohio 44118 | ) | |
| | ) | JUDGE MICHAEL H. WATSON |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANIL MAKHIJA | ) | THIRD AMENDED COMPLAINT |
| in his individual and official capacity, | ) | |
| The Ohio State University | ) | Plaintiff demands a trial by jury on |
| Fisher College of Business | ) | all issues triable of right by a jury |
| 2100 Neil Ave. | ) | |
| Columbus, OH 43210, | ) | |
| | ) | |
| ROBERT LOUNT | ) | |
| in his individual and official capacity, | ) | |
| The Ohio State University | ) | |
| Fisher College of Business | ) | |
| 2100 Neil Ave. | ) | |
| Columbus, OH 43210, | ) | |
| | ) | |
| BENNETT TEPPER | ) | |
| in his individual and official capacity, | ) | |
| The Ohio State University | ) | |
| Fisher College of Business | ) | |
| 2100 Neil Ave. | ) | |
| Columbus, OH 43210, | ) | |
| | ) | |
| JENNIFER MCLENDON | ) | |
| in her individual and official capacity, | ) | |
| The Ohio State University | ) | |
| Fisher College of Business | ) | |
| 2100 Neil Ave. | ) | |
| Columbus, OH 43210, | ) | |
| | ) | |
| WILLIAM WATTERCUTTER | ) | |
| in his individual and official capacity, | ) | |
| The Ohio State University | ) | |
| Fisher College of Business | ) | |

| | |
|---|---|
| 2100 Neil Ave. | ) |
| Columbus, OH 43210, | ) |
| | ) |
| and | ) |
| | ) |
| UNKNOWN UNIVERSITY PERSONNEL | ) |
| 1-5, | ) |
| in their individual and official capacities, | ) |
| The Ohio State University | ) |
| Fisher College of Business | ) |
| 2100 Neil Ave. | ) |
| Columbus, OH 43210. | ) |
| | ) |
| Defendants. | ) |

Plaintiff Mark Sullivan (hereinafter "Plaintiff" or "Sullivan") brings this action for damages against Defendants Anil Makhija, Robert Lount, Bennett Tepper, Jennifer McClendon, William Wattercutter, and Unknown University Personnel 1-5 ("Defendants") for violations of 42 U.S.C. Section 1983, et seq.

## INTRODUCTION

1.      Plaintiff Mark Sullivan is a United States citizen and an Ohio resident.

2.      The Ohio State University employed Sullivan from approximately 2015 through 2022.

3.      The Ohio State University is a public university in the University System of Ohio and receives funding from the State of Ohio to operate.  It is in Ohio and is a legal entity capable of being sued pursuant to state and federal law.

4.      Defendant Anil Makhija ("Makhija") is the Dean and John W. Berry, Sr. Chair in Business of the Max M. Fisher College of Business, acting under color of state law and exercising supervisory and policy-making authority for the University. Upon information and belief, he approved Sullivan's termination.  He is a "person" under 42 U.S.C. Section 1983.

2

5.     Defendant Robert Lount ("Lount") is the Chair, Department of Management and Human Resources, acting under color of state law and exercising supervisory and policy-making authority for the University.  He served as Sullivan's direct supervisor and approved Sullivan's termination. He is a "person" under 42 U.S.C. Section 1983.

6.     Defendant Bennett Tepper ("Tepper") is the Senior Associate Dean for Faculty and Research of the Max M. Fisher College of Business, acting under color of state law and exercising supervisory and policy-making authority for the University, and was Sullivan's hiring supervisor. Upon information and belief, Tepper also approved Sullivan's termination. He is a "person" under 42 U.S.C. Section 1983.

7.     Defendant Jennifer McClendon ("McClendon") is the Human Resources Business Partner of the Max M. Fisher College of Business, acting under color of state law and exercising supervisory and policy-making authority for the University, and upon information and belief, participated in the decision to terminate Sullivan's employment. She is a "person" under 42 U.S.C. Section 1983.

8.     Defendant William Wattercutter ("Wattercutter") is a Human Resources Consultant of the Max M. Fisher College of Business, acting under color of state law and exercising supervisory and policy-making authority for the University, and participated in the decision to terminate Sullivan's employment. He is a "person" under 42 U.S.C. Section 1983.

9.     Unknown University Personnel ("Personnel Defendants") were at all relevant times, University employees directly responsible for investigating Sullivan's conduct or participating in the University's decision to terminate his employment, acting under color of state law. They each are a "person" under 42 U.S.C. Section 1983.

10.     Defendants operate in and hold leadership positions in the Fisher College of Business ("FCOB"), where they are liable for acts and omissions taken under its customs, policies, or practices, and are responsible for training and supervising its employees.

11.     This is a proceeding for damages to redress the deprivation of free speech under the First Amendment of the U.S. Constitution secured to Plaintiff by 42 U.S.C. Section 1983.

12.     A substantial part of the events or omissions giving rise to Plaintiff's claims took place in Columbus, Ohio, and surrounding Ohio counties.

13.     Jurisdiction over Plaintiff's claims is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1337.  Venue in the United States District Court for the Southern District of Ohio is appropriate under 28 U.S.C. § 1391(b).  Jurisdiction and venue are proper.

## FACTS APPLICABLE TO ALL CLAIMS

14.     Plaintiff incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

15.     Plaintiff was employed as a Senior Lecturer at FCOB from approximately 2015 until his termination in May 2022.

16.     At all times relevant hereto, Plaintiff was qualified for the positions and duties in which he was employed or for which he applied or was considered.

17.     Plaintiff always performed his responsibilities successfully during his employment.

18.     Plaintiff served as a dedicated and competent public servant as an employee of Defendant.

19.     Plaintiff taught a three-credit course titled "Crucial Conversations," BUSMHR #7236, during the fall semester in 2021.  This course was designed to develop skilled engagement practices in a business environment during times of conflict, including through use of role play, stories, and simulations.

20.     Plaintiff's teaching of Crucial Conversations in 2021, was the 49th time that he had taught this award-winning class. For each of his classes, there was a significant waitlist of graduate students attempting to enroll.

21.     Crucial Conversations is a business school course designed to teach students to build skills to handle difficult conversations, develop practical ways to manage disagreement and disappointment in a constructive manner, and create methods for direct conversation to move people and organizations forward.

22.     Crucial Conversations is a course in which Plaintiff engaged in educational and instructional speech.

23.     Crucial Conversations is a course in which Plaintiff engaged in educational methods including the creation of simulated conflict in the classroom to teach students methods to deal with unexpected situations of conflict in life and in the business environment.

24.     Plaintiff's Course Overview of Crucial Conversations, published by FCOB, outlined the purpose of the course, which was "to accelerate personal growth and development of MBA and Executive MBA students in being able to respectively engage in prickly, toxic, and/or dysfunctional conversations in the spirit of building more fruitful relationships in high-demand environments."  The course taught aspiring business managers or executives to "demonstrate a capacity to constructively facilitate conversations that include deeply sensitive or controversial issues in a skilled, well-practiced manner."

25.     Plaintiff's Crucial Conversations course used an instructional method to provide practical, proven, action-based tools in an experiential environment to both challenge and support the growth of graduate students in empathically and skillfully engaging in conflict settings. This included the following:

- Observing and critiquing video vignettes of third-party conversations where disrespectful and bullying behavior is either explicitly or implicitly expressed in both choice of words and actions.

- Exploring the best ways to use classroom-based conversational tools to meet the provocateur from where they speak;

- Analytically identify triggers or subtle patterns of disruptive or coercive behavior that leads to emotional outbursts or withdrawal (i.e., fight-or-flight responses).; and

- Consistently, and actively participate in one-on-one and group role plays and simulations that test understanding and competence of normalizing disruptive moments. Gradually practice with ever-increasing levels of intensity between the provocateur and self without getting emotionally hooked or becoming defensive. (i.e., Moving from blaming behavior to partnering behavior.)

26.     In or around September 2021, Plaintiff began the section of the course that focused on more intensive role playing situations, facilitating intentional conflict with select students to apply and test usefulness of conflict reduction tools.

27.     Before beginning this unit of the class, Plaintiff advised his students verbally and in writing that "regular expectation management and supportive statements are used to prepare students for intense engagement. Actual provocative language is initially previewed to lower the shock level in early attempts to engage with disrespectful roleplay provocateurs."

28.     In or around September 2021, Plaintiff created provocative contexts in Crucial Conversations with the educational purpose of creating emotionally and socially safe environments.  Plaintiff used intentionally raw and challenging language to challenge graduate students to use conversational tools to detoxify conversation and normalize engagement in

challenging environments.  Plaintiff engaged in this educational method only after a sufficient deal of preliminary skill-building and student support.

29.     In or around September 2021, Plaintiff taught a course module to challenge graduate students to use conversational tools by using the actual words of Whitey Bulger, the Boston-based organized crime boss, recorded while he was talking to a law enforcement officer before going to prison.

30.     In this module focused on Whitey Bulger, Plaintiff quoted Bulger as saying, "I don't want to be placed in a prison cell with a bunch of niggers.  You make sure I'm in a place with my kind and I'll talk about who was behind that job of killing [X]."

31.     In this module, Plaintiff used this example to elicit an expected student response along the lines of, "I understand you have strong feelings about the kind of cell mates you will be assigned to live with.  We will want to listen more carefully to what matters to you as we also work with what is acceptable under prison rules and regulations."

32.     In this module, Plaintiff used an intentionally provocative and offensive example to assist his graduate students to develop the conversational skills to engage with offensive speech (e.g., Bulger's quote) while keeping the conversation on track to productive purposes (e.g., obtaining cooperation from Bulger in law enforcement activities).

33.     In September 2021, upon information and belief, a student in the course reported Plaintiff's speech, including the class course and lecture content, such as the Bulger material as being racially insensitive and offensive. No such occurrence happened in the other 48 classes where the exact same language was used.

34.     On or about September 30, 2021, Plaintiff's supervisor Defendant Lount informed him that the FCOB Human Resources Department, required him to investigate the content of Plaintiff's educational speech and classroom discussions. Upon completion of a phone interview

with the Plaintiff at this time, Defendant Lount communicated to Plaintiff that he understood him to be performing all his duties responsibly.

35. Defendants, along with, upon information and belief, Defendants Unknown University Personnel 1-5, engaged in investigation of Plaintiff's educational speech and classroom discussions.

36. Defendants, along with, upon information and belief, Defendants Unknown University Personnel 1-5, engaged in deliberations and a decision-making process regarding Plaintiff's educational speech and classroom discussions.

37. On or about February 25, 2022, Lount informed Plaintiff that Plaintiff's employment contract would not be renewed.

38. Defendants terminated Plaintiff's employment because of his educational speech and classroom discussions, including Crucial Conversations and the Bulger material. On May 14, 2022, Defendant Tepper said to Plaintiff during a final exit discussion, that "Lount did not know what he was doing regarding addressing the issue in a constructive and successful manner." Tepper said, "Lount just fell apart and let HR take over and do whatever they wanted to do."

39. As a lecturer, Plaintiff was subject to FCOB's established employment policies and practices.

40. Defendants' actions and the actions of FCOB employees, officers, and agents were attributable to Defendants, and were taken under color of a statute, regulation, or custom of the State of Ohio.

41. Defendants knew or should have known that they were violating Plaintiff's constitutional and contractual rights by:

      a. Subjecting Plaintiff to investigation because of the educational content of his course;

     b.      Prohibiting Plaintiff from speaking in a way that is consistent with his beliefs regarding the curriculum of his courses;

     c.      Terminating Plaintiff from employment based on and in retaliation for his course content and educational speech, including in Crucial Conversations and the Bulger material.

42.     Defendants' actions as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

43.     Plaintiff's termination was preventable had Defendants not engaged in illegal conduct in violation of Mr. Sullivan's constitutional, statutory, and legal rights.

## FIRST CAUSE OF ACTION

### (First Amendment Retaliation under 42 U.S.C. Section 1983)

44.     Plaintiff incorporates the allegations from each of the preceding paragraphs.

45.     By punishing and terminating Plaintiff for expressing his views in his academic speech and educational course content, Defendants have retaliated against Plaintiff for exercising his First Amendment rights.

46.     When Plaintiff taught Crucial Conversations and his other courses, including the Bulger material, he was engaging in academic speech related to teaching and scholarship, and engaging in expression the First Amendment protects.

47.     Plaintiff has and had during his employment a right to speak freely as an employee of a public university.

48.     Plaintiff has and had during his employment an established constitutional right to academic freedom and expression in his academic setting, including through the curriculum of Crucial Conversations and the Bulger material.

49.    Plaintiff was engaged in core academic functions, including teaching and scholarship, when he prepared, taught, and spoke at the University, including when doing so regarding the content of his Crucial Conversations course, including the Bulger material.

50.    Plaintiff was performing his official duties as a teacher and professor when he prepared, taught, and spoke at the University, including when doing so regarding the content of his Crucial Conversations course, including the Bulger material.

51.    By forbidding Plaintiff from describing his views and disseminating ideas on conflict management, Defendants silenced a viewpoint that could have led to a robust and insightful in-class discussion.

52.    Plaintiff's classroom speech as described in this Complaint related to matters of public concern and advanced ideas transcending his personal interest or opinion that impact the social and political lives of his students and the citizens of the State of Ohio.

53.    Plaintiff's interest, as a lecturer at a public university in teaching and engaging in scholarship outweighs Defendants' interest in this matter.

54.    Plaintiff and his students have an interest in hearing different and contrarian views in the classroom that outweighs Defendants' contrary interest in this matter.

55.    The contours of Plaintiff's rights to speak on matters related to teaching and scholarship were sufficiently and clearly established at the time he exercised them to apprise Defendants that retaliating against him for exercising those rights was unlawful.

56.    Defendants knew Plaintiff had engaged in protected speech, including in Crucial Conversations and the Bulger material.

57.    Defendants were aware of Plaintiff's clearly established constitutional rights and were deliberately indifferent to those rights.

58.     Plaintiff's First Amendment protected speech, including in Crucial Conversations and the Bulger material, was a substantial or motivating factor in the adverse actions he suffered at Defendants' hands.

59.     As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and noneconomic damages for which Defendants are liable, including loss of salary, wages, and benefits, and other terms and conditions of employment, pain and suffering, attorneys' fees, and costs.

60.     Defendants' treatment of Plaintiff as described herein were violations of Plaintiff's clearly established right to freedom of speech, protected by the First Amendment to the Constitution of the United States of America, for which Defendants are liable under 42 U.S.C. 1983.

## SECOND CAUSE OF ACTION

**(First Amendment Violation under 42 U.S.C. Section 1983 –
Content & Viewpoint Discrimination)**

61.     Plaintiff incorporates the allegations from each of the preceding paragraphs.

62.     By retaliating against Plaintiff for expressing educational and instructional speech, including in Crucial Conversations and the Bulger material, Defendants have engaged in content and viewpoint discrimination in violation of the First Amendment.

63.     Defendants' employment policies and the policies of FCOB require officials including Defendants to evaluate the content and viewpoint of faculty expression to determine whether it constitutes proper educational and instructional content.

64.     Defendants considered the content and viewpoint of Plaintiff's educational speech when they decided to enforce employment policies against him and terminate his employment.

65.    The contours of Plaintiff's rights to speak on matters of education consistent with his viewpoint were sufficiently and clearly established at the time he exercised them to apprise Defendants that retaliating against him for exercising those rights was unlawful.

66.    Defendants knew Plaintiff had engaged in protected speech by sharing his content and viewpoint during his academic work, including in Crucial Conversations and the Bulger material.

67.    Defendants were aware of Plaintiff's clearly established constitutional rights and were deliberately indifferent to those rights.

68.    Plaintiff's First Amendment protected speech, including in Crucial Conversations and the Bulger material, was a substantial or motivating factor in the adverse actions he suffered at Defendants' hands.

69.    As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and noneconomic damages for which Defendants are liable, including loss of salary, wages, and benefits, and other terms and conditions of employment, pain and suffering, attorneys' fees, and costs.

70.    Defendants' treatment of Plaintiff as described herein were violations of Plaintiff's clearly established rights to freedom of speech and academic expression, protected by the First Amendment to the Constitution of the United States of America, for which Defendants are liable under 42 U.S.C. 1983.

<u>PRAYER FOR RELIEF</u>

Plaintiff Mark Sullivan seeks an amount in excess of $75,000 to fully, fairly and justly compensate him for injury, damage and loss, and respectfully prays that this Court enter judgment in his favor and award him past and future economic and non-economic compensatory damages, fringe benefits, consequential damages, incidental damages, liquidated damages, interest, attorneys' fees, expert fees, all fees and costs, and any additional equitable relief that the Court deems appropriate, including, but not limited to, back pay, front pay, reinstatement and promotion.

Respectfully submitted,

*/s/ Daniel P. Petrov*
DANIEL P. PETROV (0074151)
dpetrov@tpgfirm.com
SARAH E. WYSS (0100278)
swyss@tpgfirm.com

THORMAN PETROV GROUP CO., LPA
20046 Walker Avenue
Shaker Heights, OH 44122
Phone: (216) 621-3500
Fax: (216) 621-3422

Attorneys for Plaintiff Mark Sullivan

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2024, a copy of the foregoing was filed electronically through the Court's electronic filing system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, via electronic mail.  Parties may access this filing through the Court's system.

*/s/ Daniel P. Petrov*
Attorney for Plaintiff Mark Sullivan