IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK SULLIVAN, | : | |
| Plaintiff, | : | CASE NO. 2:23-CV-03174 |
| v. | : | JUDGE MICHAEL H. WATSON |
| THE OHIO STATE UNIVERSITY, *et. al.*, | : | MAGISTRATE JUDGE KIMBERLY A. JOLSON |
| Defendants. | : | |

### DEFENDANTS ANIL MAKHIJA, ROBERT LOUNT, BENNETT TEPPER, JENNIFER MCLENDON, AND WILLIAM WATERCUTTER'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Anil Makhija, Robert Lount, Bennett Tepper, Jennifer McLendon, and William Watercutter (collectively "Defendants"), by and through counsel, respectfully move this Court to dismiss Plaintiff Mark Sullivan's ("Plaintiff") Third Amended Complaint (ECF No. 50). The grounds for this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*s/ In Son J. Loving*

IN SON J. LOVING (0084848)
*Trial Counsel*
Senior Assistant Attorney General
DAVID B. STOUFFER (0093972)
Associate Assistant Attorney General
Employment Law Section
615 W. Superior Ave., 11th Floor
Cleveland, Ohio 44113
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
ELSReview@OhioAGO.gov

              WENDY K. CLARY (0077775)
              Principal Assistant Attorney General
              Employment Law Section
              30 East Broad Street, 16th Floor
              Columbus, Ohio 43215
              (614) 644-7257 – Telephone
              (614) 752-4677 – Facsimile
              ELSReview@OhioAGO.gov

              *Counsel for Defendants*

**MEMORANDUM IN SUPPORT**

I.     BACKGROUND

Plaintiff, a former Lecturer at The Ohio State University ("OSU"), has now filed four complaints alleging that his First Amendment rights were violated when his teaching contract was not renewed. Plaintiff's Second Amended Complaint (ECF No. 38) was dismissed without prejudice for failure to state a claim. The Court granted Plaintiff leave to file a Third Amended Complaint "if Plaintiff can fix the deficiencies outlined in this Opinion and Order." (*See* Opinion and Order p. 6, ECF No. 48) (hereinafter "Opinion"). These deficiencies included Plaintiff's failure to identify his alleged protected speech and his failure to plausibly allege that his speech motivated Defendants to not renew his contract. (*Id.*) Notably, "Plaintiff [was] **CAUTIONED** that, as he has already filed three complaints, this opportunity to amend will be his last." (*Id.*) (emphasis in original).

On July 8, 2024, Plaintiff filed a Third Amended Complaint (hereinafter "Complaint") against Defendants and unknown university personnel. (ECF No. 50). The Complaint asserts two causes of action brought under 42 U.S.C. § 1983: First Amendment Retaliation and First Amendment Content & Viewpoint Discrimination. However, despite this Court's specific directive, Plaintiff's amendment does not cure the deficiencies outlined in the Opinion. Moreover, as argued below, Plaintiff's claims still fail for several independent reasons.

First, Plaintiff's use of the N-word in the sentence "I don't want to be placed in a prison cell with a bunch of niggers" is not constitutionally protected speech. Second, Plaintiff fails to plausibly allege that his contract was not renewed due to his speech. Third, Plaintiff fails to plead any facts that show how each defendant personally deprived him of a constitutional right. Lastly,

3

Defendants are entitled to immunity against Plaintiff's claims. For these reasons, Defendants move the Court to dismiss Plaintiff's Complaint in full and with prejudice.

## II. ALLEGED FACTS

Plaintiff is a former Lecturer at OSU's Fisher College of Business. (Third Am. Compl. ¶ 15, ECF No. 50). During the Fall 2021 semester, Plaintiff taught a course titled "Crucial Conversations" (hereinafter "the Course"). (*Id.* ¶ 19). Plaintiff claims the Course was "designed to teach students to build skills to handle difficult conversations, develop practical ways to manage disagreement and disappointment in a constructive manner, and create methods for direct conversation to move people and organizations forward." (*Id.* ¶ 21).

Plaintiff used an "instructional method" that included "observing and critiquing vignettes of third-party conversations where disrespectful and bullying behavior is either explicitly or implicitly expressed in both choice of words and actions." (*Id.* ¶ 25). Plaintiff "used intentionally raw and challenging language to challenge graduate students to use conversational tools to detoxify conversation and normalize engagement in challenging environments." (*Id.* ¶ 28).

In September 2021, Plaintiff quoted "Whitey Bulger, the Boston-based organized crime boss" and said during class, "I don't want to be placed in a prison cell with a bunch of niggers. You make sure I'm in a place with my kind and I'll talk about who was behind that job of killing [X]." (*Id.* ¶¶ 29-30). Plaintiff "used an intentionally proactive and offensive example" to help students to develop conversational skills to engage with offensive speech. (*Id.* ¶ 32). A student complained the Course content was "racially insensitive and offensive." (*Id.* ¶ 33). On September 30, 2021, Lount informed Plaintiff that he was required to investigate the student's complaint. (*Id.* ¶ 34). Five months later, on February 25, 2022, Lount informed Plaintiff that his employment contract would not be renewed. (*Id.* ¶ 37).

4

## III. LAW AND ARGUMENT

### A. Eleventh Amendment sovereign immunity bars Plaintiff's claims for monetary relief against Defendants in their official capacities.

The Eleventh Amendment is a jurisdictional bar that precludes lawsuits filed in federal court against a State or one of its departments or agencies, subject to a few limited exceptions. *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045-46 (6th Cir. 2015). A plaintiff may directly sue a State in federal court only where the State consents to suit or the case concerns a statute passed by Congress, pursuant to Section 5 of the Fourteenth Amendment, that has abrogated the State's sovereign immunity. *Alden v. Me.*, 527 U.S. 706, 755-56 (1999). It is well-established that Ohio has not waived its sovereign immunity and Congress did not disturb states' Eleventh Amendment immunity when it passed § 1983. *El v. Sarah Volasek*, No. 1:22-cv-394, 2022 U.S. Dist. LEXIS 126410, at *8 (S.D. Ohio 2022) (citing *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992)).

OSU, a public university, is an arm of the State for purposes of the Eleventh Amendment and therefore immune from suit in federal court. *See* Rev. Code 3345.011. This immunity extends to state officials sued in their official capacities to the extent a plaintiff seeks relief for money damages. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 n.8 (6th Cir. 2007) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Thus, suits for monetary relief against state officers acting in their official capacity are barred by Eleventh Amendment sovereign immunity. *See Stanley v. W. Mich. Univ.,* 2024 U.S. App. LEXIS 15241, at *7 (6th Cir. 2024) (*quoting Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024) ("The Eleventh Amendment bars actions against states unless they have consented to be sued or Congress, pursuant to a valid exercise of its power, unequivocally expresses its intent to abrogate sovereign immunity. And that bar also applies to state officers acting in their official capacity and entities acting on behalf of the

state.") (internal quotation marks omitted). Therefore, Eleventh Amendment sovereign immunity precludes Plaintiff's claims for monetary relief against Defendants in their official capacities. Accordingly, Defendants move the Court to dismiss Plaintiff's claims for monetary relief against them in their official capacities.

    **B.**     **Plaintiff's failure to allege how each defendant personally deprived him of a constitutional right precludes his 42 U.S.C. § 1983 claims.**

To bring a claim under §1983, a plaintiff "must allege that the defendant, while acting 'under the color of state law,' denied the plaintiff a 'right secured by the Constitution or laws of the United States.'" *Pelmear v. O'Connor*, 2019 U.S. App. LEXIS 33130, at *9 (6th Cir. Nov. 5, 2019) (quoting *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir. 2006)). Specifically, a plaintiff must allege how each State official defendant, through their own individual actions, "'directly participated in the alleged misconduct'" and violated the Constitution. *Gardner v. Evans,* 920 F.3d 1038, 1051 (6th Cir. 2019) (quoting *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013)). It is a defendant's own individual conduct that gives rise to an actionable claim under §1983. *Id.* (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)). Thus, §1983 claims cannot proceed on theories of respondeat superior or vicarious liability. *Id.* (internal citation omitted).

According to the Complaint, Lount informed Plaintiff that (1) he was required to investigate the student's complaint; and (2) that Plaintiff's employment contract would not be renewed. (Third Am. Compl. ¶¶ 34, 37, ECF No. 50). These allegations do not identify conduct that gives rise to an actionable § 1983 claim against Lount. The Complaint also alleges that Defendants collectively:

- "[T]erminated Plaintiff's employment because of his educational speech and classroom discussions." (*Id.* ¶ 38).

- "[K]new or should have known that they were violating Plaintiff's constitutional and contractual rights by: (a) Subjecting Plaintiff to investigation because of the educational content of his course; (b) Prohibiting Plaintiff from speaking in a way that is consistent with his beliefs regarding the curriculum of his courses; and (c) Terminating Plaintiff from employment based on and in retaliation for his course content and education speech, including in Crucial Conversations and Bulger material." (*Id.* ¶ 41).

These allegations are conclusory and offered without any supporting factual content. As such, they are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937 (2009). Moreover, these allegations fail to sufficiently identify what role, if any, each defendant played in Plaintiff's termination or in the investigation.[1] In the absence of any allegations that Defendants were personally involved in unconstitutional conduct, Plaintiff's §1983 claims are doomed. Accordingly, Defendants move the Court to dismiss Plaintiff's Complaint in its entirety.

    **C.**     **Plaintiff cannot pursue his content and viewpoint discrimination claims based on his classroom speech.**

Plaintiff brings claims for content and viewpoint discrimination in violation of the First Amendment. Content discrimination occurs when the government restricts "all speech on a subject" while viewpoint discrimination occurs when the government restricts "a particular message on a subject." *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 499 (6th Cir. 2020) (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829-30 (1979). Content and viewpoint discrimination claims "are relevant to a public forum analysis, but [have] no application in the analysis which applies to public employee speech under *Pickering*." *Fuller v. Warren Cnty. Educ. Serv. Ctr.*, Case No. 1:21cv451, 2022 U.S. Dist. LEXIS 25659, at *10 (S.D. Ohio 2022) (quoting *Amalgamated Transit Union Loc. 85 v. Port Auth. Of Allegheny Cty.*, 513 F. Supp. 3d 593, 621 (W.D. Pa 2021) ("Content and viewpoint discrimination are

---

[1] As argued in Section D(ii) below, the investigation does not constitute an adverse action.

concerns that ordinarily arise where the government restricts speech in public forums, not in the workplace.")). Plaintiff's First Amendment claims are based on statements he made in the classroom. (Third Am. Compl. ¶ 62, ECF No. 50). Therefore, he cannot pursue his First Amendment claim under a theory of content or viewpoint discrimination. Accordingly, Defendants move the Court to dismiss Count II of the Complaint.

      **D.**    **The Complaint fails to support a plausible inference that Defendants retaliated against Plaintiff for his alleged protected conduct.**

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment rights. To establish his retaliation claim, Plaintiff must demonstrate that: (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him; and (3) the adverse action was motivated, at least in part, by his protected speech or conduct. *Khatri v. Ohio State Univ.*, 2022 U.S. App. LEXIS 2170, at *7 (6th Cir. 2022) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)).

"[P]rofessors at public universities retain First Amendment protections at least when engaged in core academic functions, such as teaching and scholarship." *Meriwether v. Hartop,* 999 F.3d 492, at 505 (6th Cir. 2021) (citing *Hardy v. Jefferson Cmty. Coll.,* 260 F.3d 671, 680 (6th Cir. 2001). The Sixth Circuit applies the *Pickering-Connick* framework to determine whether a professor "has plausibly alleged that his in-class speech was protected by the First Amendment." *Id.* at 507 (6th Cir. 2021). Under the *Pickering-Connick* framework, a plaintiff must sufficiently allege that his speech touched on a matter of public concern. *Id.* If the speech touches upon a matter of public concern, a court conducts a balancing test to determine "whether the plaintiff's interest in commenting outweighs the defendant's interest as an employer in promoting the efficiency of the public services it performs through its employees." *Gruber v. Tenn. Tech. Bd. of Trst.,* 2023 U.S. App. LEXIS 11987, at *4-5 (6th Cir. May 16, 2024) (quoting *Bennett v. Metro Gov't of*

8

*Nashville & Davidson Cnty.,* 977 F.3d 530, 537 (6th Cir. 2020) (internal citation omitted). "The balancing test considers the manner, time, and place of the expressive action, and the pertinent considerations include whether the action (1) impairs discipline by superiors or harmony among coworkers, (2) negatively affects close working relationships for which personal loyalty and confidence are necessary, (3) impedes performance of the speaker's duties or interferes with the employer's regular operations, and (4) undermines the employer's mission." *Id.* at *5 (quoting *Bennett,* 977 F.3d 539-40).

      i.    <u>Plaintiff's speech does not touch upon a matter of public concern, nor does it fall within the realm of academic freedom.</u>

The principle of academic freedom covers all classroom speech related to matters of public concern. *See Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1188 (6th Cir. 1995) ("The analysis of what constitutes a matter of public concern and what raises academic freedom concerns is of essentially the same character."). "[A]cademic freedom emphasizes the essentiality of free public expression of ideas." *Id.* "The linchpin of the inquiry is, thus, for both public concern and academic freedom, the extent to which the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives." *Id.* at 1189.

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019) (quoting *Lane v. Franks*, 573 U.S. 228, 241 (2014)). In determining whether speech touches on a matter of public concern, courts examine the content, form, and context of a given statement. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 229 (6th Cir. 2005) (citing *Hardy,* 260 F.3d at 677).

Here, Plaintiff used the N-word in the sentence, "I don't want to be placed in a prison cell with a bunch of niggers. You make sure I'm in a place with my kind and I'll talk about who was behind that job of killing [X]." (Third Am. Compl. ¶¶ 29-30, ECF No. 50). Nothing in this comment touched on a matter of political, social, or other concern to the community. Like the plaintiff in *Dambrot*, Plaintiff's use of the N-word "was not the essence of his communicative act" as it was not germane to the classroom discussion, nor did it seek to advance any viewpoint or academic message. *Dambrot*, 55 F.3d at 1190. To the contrary, Plaintiff used the racial epithet as a "proactive and offensive example" to trigger an emotional reaction from his students. (Third Am. Compl. ¶ 32, ECF No. 50). In this regard, OSU has the right to not tolerate Plaintiff's use of the N-word as a tool to upset students. *See Dambrot*, 55 F.3d at 1190 (citing *Hetrick v. Martin,* 480 F.2d 705, 708-9 (6th Cir. 1973) ("An instructor's choice of teaching methods does not rise to the level of protected expression.")). Plaintiff's controversial use of the N-word, imparted with no socially or politically relevant message, does not touch on a matter of public concern. Plaintiff's First Amendment claim fails at the outset. Therefore, this Court need not conduct the *Pickering* balancing test.[2]

        ii.    <u>Plaintiff fails to plausibly allege that the investigation constitutes an adverse action.</u>

Plaintiff fails to plead sufficient facts to state a claim based on the investigation. As discussed in Section B above, Plaintiff fails to allege any facts even remotely suggesting that the

---

[2] Assuming *arguendo* Plaintiff's speech touches upon a matter of public concern, Defendants assert that Plaintiff's interest in using racial slurs during class is not outweighed by OSU's interest in effectively and efficiently fulfilling its responsibilities to the public. *See Rahn v. Kaps,* 92 Fed. Appx. 149, 154 (6th Cir. Jan. 23, 2024). As evidenced by the student complaint, Plaintiff's use of the N-word during class was disruptive and impeded OSU's ability to fulfill its responsibilities. *Id.* at 155. Accordingly, the Complaint fails to sufficiently allege that Plaintiff engaged in protected conduct.

10

investigation was lodged in retaliation for his speech. Plaintiff claims that Defendants "knew or should have known" that they were violating Plaintiff's rights by subjecting him to an investigation. (Third Am. Compl. ¶ 41, ECF No. 50). The Complaint is devoid of any other allegations regarding the investigation. Plaintiff's conclusory statements, without more, do not sufficiently allege that Defendants investigated Plaintiff in retaliation for his speech. Thus, Plaintiff cannot argue that the investigation was an adverse action.

   iii. <u>Plaintiff fails to plausibly allege that his contract was not renewed in response to his speech.</u>

This Court previously dismissed Plaintiff's Second Amended Complaint upon finding that temporal proximity alone was insufficient to establish causation. (Opinion pp. 3-4, ECF No. 48). "[T]o plead a causal connection in First Amendment retaliation cases, plaintiffs must establish that the adverse action at issue was motivated at least in part by protected conduct. *Lyons v. Tecumseh Loc. Sch. Dist.*, Case No. 3:23-cv-74, 2023 U.S. Dist. LEXIS 178069, at *14 (S.D. Ohio Oct. 3, 2023) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399 (6th Cir. 2010) (internal citations and quotation marks omitted). "'Bare allegations' of causation will not suffice to establish a First amendment retaliation claim." *Id.* at *15 (quoting *Holsapple v. Cunningham*, 817 F. App'x. 95, 101 (6th Cir. 2020) (internal citation omitted).

Despite notice of his deficient pleading and a third opportunity to amend, the facts alleged in the Complaint do not support a causal connection between Plaintiff's speech and his non-renewal. The Complaint simply states:

- In September 2021, a student reported Plaintiff's use of a racial epithet as racially insensitive and offensive. (Third Am. Compl. ¶ 33, ECF No. 50).

- In connection with the student complaint, on September 30, 2021, Plaintiff's supervisor informed Plaintiff that he had to conduct an investigation. (*Id.* ¶ 34).

- Defendants, upon information and belief, conducted an investigation. (*Id.* ¶ 35).

11

- On February 25, 2022, Plaintiff's supervisor informed him that his employment contract would not be renewed. (*Id.* ¶ 37).

- Defendants knew about Plaintiff's speech. (*Id.* ¶ 56).

These allegations are insufficient to show that the decision not to renew Plaintiff's contract was in any way motivated by his speech. Although Plaintiff alleges that five months passed between his speech and non-renewal, the Sixth Circuit has repeatedly held that temporal proximity alone is insufficient to establish causation. *See Lyons*, 2023 U.S. Dist. LEXIS 178069, at *15-16 (citing *Vereecke*, 609 F.3d at 400) (internal citation omitted) ("[T]emporal proximity alone will not suffice to establish causation for a First Amendment claim. Allegations of temporal proximity should be accompanied, when possible, by other indicia of retaliatory conduct to support a causal inference."); *see also Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) (finding a four-month gap between a protected action and an adverse action insufficient to establish causation without other indicia of retaliatory conduct); *see also Holsapple v. Cunningham*, 817 Fed. Appx. 95, 101-02 (6th Cir. 2020) (quoting *Coleman v. Bowerman*, 474 F.App'x 435, 437 (6th Cir. 2012) (per curiam) (internal citation omitted) ("[W]hen other evidence of retaliatory motive is lacking, [our court] has been reluctant to hold that temporal proximity is sufficient to establish causation"). Accordingly, Defendants move the Court to dismiss Count I of the Complaint.

   **E.**   <u>**Defendants are entitled to qualified immunity against Plaintiff's claims.**</u>

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). If a defendant raises the affirmative defense of qualified immunity, then the plaintiff must show that

12

(1) the defendant violated a constitutional right; and (2) the right was "clearly established." *Habich v. Wayne Cnty.*, 2023 U.S. App. LEXIS 8868, at *3 (6th Cir. 2023) (quoting *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021). The first prong of a qualified immunity analysis "addresses whether the facts, 'when taken in the light most favorable to the party asserting the injury, show the [defendants'] conduct violated a constitutional right.'" *Howard v. Livingston Cnty.* 2023 U.S. App. LEXIS 1540, at *17 (6th Cir. Jan. 20, 2023). The second prong considers whether "the right was 'clearly established such that a reasonable official would understand that what he is doing violates that right.'" *Id.* at *17-18 (internal citation and quotation omitted).

"To be 'clearly established,' the right 'must be so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right.'" *Brazell-Hill v. Parsons*, No. 2:17-cv-912, 2020 U.S. Dist. LEXIS 147479, at *11 (S.D. Ohio Aug. 17, 2020) (quoting *Jones v. Clark Cty.*, 959 F.3d 748, 2020 WL 2520267, at *12 (6th Cir. 2020)). Whether a state official is entitled to qualified immunity is determined by the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009) (internal citation omitted). "It does not matter which query is addressed first; for immunity to attach, both must be satisfied." *Demers v. Ohio Civil Rights Comm'n,* No. 2:23-cv-940, 2023 U.S. Dist. LEXIS 196137, at *14 (S.D. Ohio Nov. 1, 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009)).

As argued above, the Complaint is devoid of any facts that support a plausible inference that Defendants violated Plaintiff's constitutional right to free speech. According to the Complaint, "[o]n or about February 25, 2022, Lount informed Plaintiff that Plaintiff's employment contract would not be renewed." (Third Am. Compl. ¶ 37, ECF No. 50). Plaintiff also generically concludes

13

that "Defendants terminated Plaintiff's employment because of his educational speech and classroom discussions." (*Id.* ¶ 38). These bare-bones allegations are insufficient to establish that any of the Defendants engaged in conduct that violated a constitutional right held by Plaintiff. Plaintiff cannot advance his claims based on a scant possibility that Defendants acted unlawfully. Thus, it is abundantly clear that no violation of Plaintiff's clearly established constitutional rights can be found under any set of facts alleged in the Complaint. Therefore, Defendants are entitled to qualified immunity and move the Court to dismiss all claims against them in their personal capacities.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiff's Third Amended Complaint, in full and with prejudice.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*s/ In Son J. Loving*

IN SON J. LOVING (0084848)
*Trial Counsel*
Senior Assistant Attorney General
DAVID B. STOUFFER (0093972)
Associate Assistant Attorney General
Employment Law Section
615 W. Superior Ave., 11th Floor
Cleveland, Ohio 44113
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
ELSReview@OhioAGO.gov

WENDY K. CLARY (0077775)
Principal Assistant Attorney General
Employment Law Section
30 East Broad Street, 16th Floor

14

>Columbus, Ohio 43215
>(614) 644-7257 – Telephone
>(614) 752-4677 – Facsimile
>ELSReview@OhioAGO.gov
>
>*Counsel for Defendants*

## CERTIFICATE OF SERVICE

This will certify that the foregoing *Defendants Anil Makhija, Robert Lount, Bennett Tepper, Jennifer McLendon, and William Watercutter's Motion to Dismiss Plaintiff's Third Amended Complaint* was filed electronically on August 5, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>*s/ In Son J. Loving*
>
>IN SON J. LOVING (0084848)
>*Trial Counsel*
>Senior Assistant Attorney General

15