**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK SULLIVAN,** | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: 2:23-cv-3174 |
| | ) | |
| vs. | ) | |
| | ) | JUDGE WATSON |
| | ) | |
| **THE OHIO STATE UNIVERSITY,** | ) | |
| *et al.*, | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **DEFENDANTS' MOTION** |
| Defendants. | ) | **TO DISMISS THIRD AMENDED** |
| | ) | **COMPLAINT** |

## I.     INTRODUCTION

Plaintiff Mark Sullivan ("Plaintiff") opposes the Motion to Dismiss Plaintiff's Third Amended Complaint filed by Defendants Anil Makhija, Robert Lount, Bennett Tepper, Jennifer McLendon, and William Watercutter (collectively "Defendants") on August 5, 2024. Defendants seek to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(1) and Rule 12(b)(6). Plaintiff asks the Court to deny Defendants' Motion. Contrary to Defendants' contentions, Plaintiff properly alleged that he engaged in constitutionally protected speech. Second, Plaintiff has pled sufficient factual support for his claim that his teaching contract was non-renewed due to his constitutionally protected speech. Defendants have presented arguments that they may use to defend against liability at a summary judgment or trial stage, but these arguments fail to establish that Plaintiff has not met his pleading burden. Third, Plaintiff's Complaint provides more than enough factual detail regarding each individual Defendant's violation of his constitutional rights. Lastly,

Defendants are not entitled to qualified immunity.[1] Accordingly, Defendants' Motion should be denied in its entirety.

## II.    LAW & ARGUMENT

### A. Standard of Review

Defendants cannot credibly argue that they do not understand Plaintiff's claims.  Courts disfavor motions to dismiss under Rule 12(b)(6). *See e.g., Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 U.S. App. LEXIS 26601, at *12 (6th Cir. Oct. 19, 1999). A motion to dismiss should be denied "unless is appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Trust,* 769 F.3d 399, 403 (6th Cir. 2014).  A complaint will survive a motion to dismiss if the plaintiff "alleges facts that 'state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level.'" *Krueger v. Home Depot USA, Inc.*, 674 F. App'x 490, 493 (6th Cir. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (additional citation and internal quotation marks omitted); *see also Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005) ("under the notice pleading standard of the Federal Rules, courts are reluctant to dismiss colorable claims which have not had the benefit of factual discovery").

"Claims under 42 U.S.C. § 1983 'are not subject to heightened pleading standards.'" *Id.* (quoting *Memphis, Tenn., Area Local, Am. Postal Workers Union, AFL/CIO v. City of Memphis*, 361 F.3d 898, 902, 86 Fed. Appx. 137 (6th Cir. 2004)). Specifically, for employment-related cases

---

[1] In support of their Motion, Defendants also argue that the Eleventh Amendment bars claims against Defendants in their official capacities. Plaintiff does not oppose this argument.

like this one, the United States Supreme Court upheld the principle that a plaintiff is not required to plead detailed facts to support each *prima facie* element of his case but must merely set forth a short and plain statement of his claim consistent with Fed. R. Civ. P. 8(A)'s notice pleadings standard. *See Bell Atlantic Corp v. Twombly*, 550 U.S 554, 569-570, 127 S.Ct. 1955 (2007) (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 and 515 (2002)).

Plaintiff's § 1983 claims are clear, unambiguous, and plausible claims rooted in Plaintiff's constitutionally protected speech and Defendants' deprivation of his constitutional rights. Defendants ask this Court to ignore the facts set forth in Plaintiff's Third Amended Complaint, which establish that Plaintiff's claims against Defendants are plausible. For these reasons, Plaintiff respectfully requests that the Court deny the Motion to Dismiss or render it moot.

**B. <u>Plaintiff's Complaint Is Well-Pled and Plausible.</u>**

The facts in Plaintiff's Third Amended Complaint sufficiently allege plausible claims for which Plaintiff is entitled to relief. To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, Plaintiff must allege that:

> (1) he was engaged in constitutionally protected activity; (2) that an adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of his constitutional rights.

*Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001) (citing *Leary v. Daeshner*, 228 F.3d 729, 737 (6th Cir. 2000)). Plaintiff has sufficiently alleged each of these elements and his Complaint is sufficient.

Regarding the first element, Plaintiff "must show that [his] speech touched on matters of public concern, and that his 'interest in commenting upon matters of public concern…outweighs the interest of the State, as an employer, in promoting the efficiency of the public service it

performs through its employees.'" *Id.* (quotation omitted).The Complaint specifically alleges that Plaintiff was employed as a Senior Lecturer at Max M. Fisher College of Business at The Ohio State University from approximately 2015 until his termination in May 2022. Third Amended Complaint at ¶ 15. Plaintiff taught a course titled Crucial Conversations, in which he engaged in constitutionally protected speech. Crucial Conversations is a business school course designed to teach students to build skills to handle difficult conversations, develop practical ways to manage disagreement and disappointment in a constructive manner, and create methods for direct conversation to move people and organizations forward. *Id.* at ¶ 21. Crucial Conversations is a course in which Plaintiff engaged in educational and instructional speech and in which Plaintiff engaged in educational methods including the creation of simulated conflict in the classroom to teach students methods to deal with unexpected situations of conflict in life and in the business environment. *Id.* at ¶¶ 22, 23.

In September 2021, Plaintiff began the section of the course that focused on more intensive role playing situations, facilitating intentional conflict with select students to apply and test usefulness of conflict reduction tools. *Id.* at ¶ 26. Plaintiff's course module included a scenario on negotiating with a hostile witness by using the words of Whitey Bulger, the Boston-based organizational crime boss. *Id.* at ¶¶ 19, 29, 46. Plaintiff quoted Bulgar as saying, "I don't want to be placed in a prison sell with a bunch of niggers. You make sure I'm in a place with my kind and I'll talk about who was behind that job of killing [X]." *Id.* at ¶ 30. Plaintiff sufficiently established that his speech touched on a matter of public concern, because his statements "impact[ed] the social and political lives of his students and the citizens of the State of Ohio." *Id.* at ¶ 52. Additionally, he also alleged that his interest in commenting on matters of public concern and in

hearing contrarian views in the classroom outweighed Defendants' interest as an employer. *Id.* at ¶ 53, 54.

There can be no reasonable dispute that Plaintiff sufficiently alleged an adverse employment action, satisfying the second element of his claim. Plaintiff alleged that in September 2021, a student reported his speech and Defendants responded by subjecting Plaintiff to an investigation. *Id.* at ¶¶ 33, 34. Plaintiff sufficiently alleged that he suffered adverse actions, including that Defendants prohibited Plaintiff from speaking in a way that is consistent with his beliefs regarding the curriculum of his courses and that Defendants did not renew his employment contract and terminated his employment. *Id.* at ¶¶ 37, 38, 41. Defendants argue that Sullivan did not "plausibly allege that the investigation constitutes an adverse action." Motion to Dismiss at p. 10. This is not a fair reading of the Complaint; regardless, it is immaterial as Sullivan alleged that on or about February 25, 2022, Lount informed Plaintiff that Plaintiff's employment contract would not be renewed after investigation. *Id.* at ¶ 37. The termination of his employment is an adverse action.

Regarding the third element, Plaintiff sufficiently alleged that the adverse actions were motivated in response to the exercise of his constitutional rights, specifically that Defendants terminated his employment because of and in retaliation for his constitutionally protected speech. *Id.* at ¶¶ 38, 45, 58, 68. Therefore, there is sufficient detail to raise Plaintiff's claims beyond a speculative level. For this independent reason, the Motion to Dismiss should be denied.

C. **Plaintiff Properly Asserts a Claim for Content and Viewpoint Discrimination.**

Defendants incorrectly suggest that Plaintiff cannot pursue a First Amendment content and viewpoint discrimination claim based on his classroom speech as a public employee in a workplace setting. Motion to Dismiss at p. 7, *citing Fuller v. Warren Cty. Educ. Serv. Ctr.*, 2022 U.S. Dist.

LEXIS 25659 (S.D. Ohio Feb. 14, 2022). *Fuller* states in *dicta* that viewpoint discrimination "has no application in the analysis which applies to public employee speech." *Id.* at *10. This comment, however, is based upon *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006), which hold that a plaintiff must speak as a *private* citizen on a matter of public concern to establish a viewpoint discrimination claim. Under this line of cases, a *public* employee does not advance a protected viewpoint when speaking on workplace matters, because such matters are not of public concern.

This point is inapplicable in the academic setting and this case. The Sixth Circuit has held that *Garcetti* does not apply to classroom speech under the academic-freedom exception. *Bonnell v. Lorenzo*, 241 F.3d 800, 823 (6th Cir. 2001); *see Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1188-89 (6th Cir. 1995). *Garcetti* and *Pickering* bar viewpoint discrimination claims by public employees speaking on workplace matters; but that bar does not apply to academic settings or to Sullivan's viewpoint.

Defendants cite *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021), which makes clear that Plaintiff can in fact pursue a viewpoint discrimination claim in the context of an academic workplace. In *Meriwether*, a professor "advanced a viewpoint on gender identity," through his refusal to address a student as a woman. *Id.* at 509. In reversing a district court's dismissal of the professor's First Amendment claims, the Sixth Circuit held that public universities "cannot force professors to avoid controversial viewpoints altogether in deference to a state-mandated orthodoxy," noting that "when the state stifles a professor's viewpoints on a matter of public import, much more the professor's rights are at stake." *Id.* at 505, 507; *see also Tucker v. Cal. Dep't of Educ.*, 97 F.3d 1204, 1216 (9th Cir. 1996) (holding that an employee, who worked for the California State Department of Education raised a colorable claim that his employer's order

banning the display of religious materials outside employees' cubicles or offices constituted impermissible viewpoint discrimination). Sullivan has properly pled a claim for content and viewpoint discrimination.

**D. <u>Plaintiff Properly Alleged that He Engaged in Constitutionally Protected Speech</u>.**

Defendants improperly suggest a merits-based approach, asserting that Plaintiff has not successfully *proven* each element of his claim.  Of course, this is not Plaintiff's burden at the pleading stage, at which he must simply assert plausible claims for relief. When Plaintiff taught Critical Conversations and his other courses, he was engaging in academic speech related to teaching and scholarship, and engaging in expression the First Amendment protects. Third Amended Complaint at ¶ 46. Plaintiff has and had during his employment an established constitutional right to academic freedom and expression in his academic setting. *Id.* at ¶ 48. In his retaliation claim, Plaintiff alleges that Defendants' actions and the actions of FCOB employees, officers, and agents were attributable to Defendants, and were taken under color of a statute, regulation, or custom of the State of Ohio. *Id.* at ¶ 40.

**1.  Plaintiff Has Plausibly Alleged that He Spoke on a Matter of Public Concern.**

Defendants futilely assert that Plaintiff has not established the first element of his First Amendment retaliation claim – that he engaged in constitutionally protected speech, because he failed to demonstrate that his speech touched on a matter of public concern. Motion to Dismiss at p. 9-10. Plaintiff has alleged that he was engaged in core academic functions, including teaching and scholarship, when he prepared, taught, and spoke at the University, including when doing so regarding the content of his Crucial Conversations course. *Id.* at ¶ 49. He further alleged that by forbidding Plaintiff from describing his views and disseminating ideas on conflict management, Defendants silenced a viewpoint that could have led to a robust and insightful in-class discussion.

*Id.* at ¶ 51. Plaintiff's classroom speech as described in this Complaint related to matters of public concern and advanced ideas transcending his personal interest or opinion that impact the social and political lives of his students and the citizens of the State of Ohio. *Id.* at ¶ 52.

Plaintiff further alleged that these violations were of known rights of Plaintiff's. The contours of Plaintiff's rights to speak on matters related to teaching and scholarship were sufficiently and clearly established at the time he exercised them to apprise Defendants that retaliating against him for exercising those rights was unlawful. *Id.* at ¶ 55. Defendants knew Plaintiff had engaged in protected speech. *Id.* at ¶¶ 56, 66. Defendants were aware of Plaintiff's clearly established constitutional rights and were deliberately indifferent to those rights. *Id.* at ¶¶ 57, 67. Ultimately, Plaintiff alleged that his First Amendment protected speech was a substantial or motivating factor in the adverse actions he suffered at Defendants' hands. *Id.* at ¶¶ 58, 68.

The Sixth Circuit has previously recognized the protected nature of Plaintiff's specific classroom speech. "Because the essence of a teacher's role is to prepare students for their place in society as responsible citizens, classroom instruction will often fall within the Supreme Court's broad conception of 'public concern.'" *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 679 (6th Cir. 2001). Plaintiff's speech, including the use of a Whitey Bulger quote referencing themes of race undoubtedly addressed a matter of public concern. A teacher's in-class speech about "race, gender, and power conflicts" addresses "matters of overwhelming public concern." *Id.* In *Hardy v. Jefferson Cmty. Coll.*, the Sixth Circuit held that a professor's in-class discussion of "socially controversial words," including the "N" word, touched on a matter of public concern, because the professor's speech was "germane to the subject matter of his lecture on the power and effect of language…[t]he course was on interpersonal communications, and [the professor's] speech was limited to an academic discussion of the words in question." *Id.* at 678-79; *see also Evans-Marshall*

8

*v. Bd. of Educ.*, 428 F.3d 223, 231 (6th Cir. 2005) (holding that the teaching of *To Kill a Mockingbird* was clearly a matter of public concern, since it was reasonable to infer that the plaintiff taught themes of race and justice).

Defendants incorrectly maintain that Plaintiff's speech did not touch on a matter of public concern because he did not seek to advance any viewpoint. Motion to Dismiss at 10. This is not true. Sullivan advanced educational viewpoints related to the use of "conversational tools to detoxify conversation and normalize engagement in challenging environments." Third Amended Complaint at ¶ 28. Sullivan "used an intentionally provocative and offensive example to assist his graduate students to develop the conversational skills to engage with offensive speech (e.g., Bulger's quote) while keeping the conversation on track to productive purposes." *Id.* at ¶ 32. The entire Crucial Conversations course is designed to teach students to build skills to handle difficult conversations, develop practical ways to manage disagreement and disappointment in a constructive manner, and create methods for direct conversation to move people and organizations forward. *Id.* at ¶ 21. This is precisely the type of skill that Ohio State University should value in its graduate business school students, and the viewpoint that Sullivan advanced. Moreover, in *Cockrel v. Shelby Cty. Sch. Dist.*, the Sixth Circuit held that there is no requirement of a "particularized message" to state a claim for viewpoint discrimination. 270 F.3d 1036, 1049 (6th Cir. 2001) (holding that a teacher's sponsorship of an in-class speaker on industrial hemp was speech, despite the lack of a "particularized message" such as "advocating or speaking against hemp's use as an environmental alternative to cutting down trees").

Defendants erroneously argue that OSU had a right not to tolerate Plaintiff's use of the "N" word as a tool to upset students. Motion to Dismiss at p. 10. This argument is a straw man, as Sullivan's Complaint alleges not that it was a tool to upset students, but a tool to teach "aspiring

business managers or executives to 'demonstrate a capacity to constructively facilitate conversations that include deeply sensitive or controversial issues in a skilled, well-practiced manner.'" Third Amended Complaint at ¶ 24. Moreover, "[i]n the academic setting 'dissent is expected' and, accordingly, so is at least some disharmony" *Higbee v. E. Mich. Univ.*, 399 F. Supp. 3d 694, 704 (E.D. Mich. 2019) (quoting *Smith v. College of the Mainland*, 63 F.Supp.3d 712, 718-719 (S.D. Texas)). "[T]he Sixth Circuit clearly acknowledges that a university professor's speech is not *per se* punishable just because it incorporates racially derogatory remarks." *Id.* at 706. Thus, Plaintiff's speech clearly touched on a matter of public concern.

### 2. Plaintiff's Rights to Free Speech and Academic Freedom Outweigh OSU's Interest in Restricting that Speech.

Plaintiff's interest in free academic speech and commenting on a matter of public concern plainly outweighs Defendants' interest in restricting in-class discussion. Like in the present case, in *Hardy v. Jefferson Cmty. Coll.*, the defendants argued that derogatory language did not warrant constitutional protection and that the college had a legitimate interest in avoiding disruption. *Id.* at 680. However, the court rejected both arguments, noting the "robust tradition of academic freedom in our nation's post-secondary schools," as well as the fact that the derogatory words were limited to a single lecture, that only one student objected, and there was no indication that the lecture undermined the professor's working relationship, interfered with his duties, or impaired discipline. *Id.* at 680-81. Here too, only one student objected to Plaintiff's speech and Plaintiff's speech did not interfere with his duties.

Moreover, "prior approval of controversial speech by the school or the Board undercuts the interests of the state in controlling the workplace." *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 231 (6th Cir. 2005). Here, Plaintiff previously taught Crucial Conversations 48 times prior to the class at issue during the fall semester of 2021. Third Amended Complaint at ¶ 20. Accordingly,

10

because Defendants previously permitted Plaintiff to engage in this type of speech, Plaintiff's interest in commenting on a matter of public concern obviously outweighs Defendants' interest in controlling in-class discussion. Therefore, Plaintiff has plausibly alleged the first element of a First Amendment Retaliation – that he spoke on a matter of public concern.

**E.** **Plaintiff Plausibly Alleged that His Employment Contract was Non-Renewed Due to His Constitutionally Protected Speech.**

Plaintiff's plausibly alleged that the exercise of his rights under the First Amendment resulted in the non-renewal of his teaching contract. *Id.* at ¶¶ 38, 41, 45, 58, 68. Notably, although Defendants maintain that the decision not to renew Plaintiff's teaching contract was not motivated by Plaintiff's speech, Defendants offer no other explanation for the termination of his contract. At the Rule 12 stage, "a court should assume the veracity" of "well-pleaded factual allegations." *Ashcroft, supra,* at 1949. Defendants advance an argument regarding temporal proximity; however, this is an issue not properly before the Court at this stage, but at summary judgment. Even if the Court were to apply it, however, Sullivan satisfies the higher summary judgment standard under the law of the Sixth Circuit. At summary judgment, to establish causation on a First Amendment retaliation claim, all the plaintiff must do is put forth "more than a scintilla" of evidence that his protected speech motivated his subsequent termination. *Way v. Shawnee Twp.*, 192 F. Supp. 3d 867, 880 (N.D. Ohio 2016) (citing *Leary v. Daeschner*, 349 F.3d 888, 900-02 (6th Cir. 2003)).

Defendants maintain that temporal proximity between the protected conduct and the adverse action alone is insufficient to satisfy the causation element. Motion to Dismiss at p. 12. However, "temporal proximity alone can, in certain circumstances, suffice to show a causal connection in a retaliation case" where, as here, the adverse action occurred close in time after the protected activity. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305 (6th Cir. 2012) (on

appeal of a grant of summary judgment in favor of defendants as to the plaintiff's First Amendment retaliation claim). Additionally, in *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001), on appeal of the district court's decision granting defendants' motion for summary judgment, the Court of Appeals held that the plaintiff had presented sufficient evidence to establish the causation element of her First Amendment retaliation claim, where the superintendent, based on parent and teacher complaint letters, initiated an investigation into the teacher's conduct following the teacher's sponsorship of an in-class speaker on industrial hemp and the teacher was subsequently terminated. The court concluded that the temporal proximity between the protected conduct and the adverse action, as well as the influence the parent and teacher complaints had on defendants constituted sufficient evidence that the teacher's discharge was motivated, at least in part, by her decision to instruct her students about industrial hemp. *Id.* Similarly, Plaintiff's Complaint alleged that an investigation into the content of his classroom discussions was initiated following a student's complaint and that he was terminated shortly thereafter. Complaint at ¶¶ 33, 34, 35, 37.

Additionally, Plaintiff's conversation with Defendant Tepper during his final exit discussion regarding Lount's actions is evidence that the non-renewal of Plaintiff's contract was motivated by Plaintiff's protected activity. In May 2022, Defendant Tepper said to Plaintiff during a final exit discussion that "Lount did not know what he was doing regarding addressing the issue in a constructive and successful manner." Tepper said, "Lount just fell apart and let HR take over and do whatever they wanted to do." Complaint at ¶ 38. Therefore, Plaintiff has sufficiently alleged the causation element of his First Amendment retaliation claim.

F. **Plaintiff Sufficiently Alleged That Each Defendant Was Personally Involved in the Unconstitutional Conduct.**

Defendants contend that Plaintiff's Complaint fails to allege each Defendant's personal involvement in the events outlined in the Complaint. Motion to Dismiss at p. 6. This assertion is untrue. To establish a § 1983 claim, a plaintiff must show that a defendant "personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct." *Coleman v. Mohlman*, Civil Action No. 2:19-cv-13494, 2020 U.S. Dist. LEXIS 174463, at *24 (E.D. Mich. Aug. 24, 2020). Plaintiff has alleged specific conduct by each Defendant, such that a jury may reasonably find constitutes unconstitutional conduct. For example, Plaintiff alleged:

- Defendant Anil Makhija was the Dean and John W. Berry Sr. Chair in Business of the Max M. Fisher College of Business and he **approved of** Plaintiff's termination. Complaint at ¶ 4.
- Defendant Robert Lount served as Plaintiff's direct supervisor, and he **approved of** Plaintiff's termination. *Id.* at ¶ 5.
- Defendant Bennett Tepper was Plaintiff's hiring supervisor and he **approved of** Plaintiff's termination. *Id.* at ¶ 6.
- Defendant Jennifer McClendon is the Human Resources Business Partner of the Max M. Fisher College of Business, and she **participated in** the decision to terminate Plaintiff's employment. *Id.* at ¶ 7.
- Defendant William Wattercutter is a Human Resources Consultant Partner of the Max M. Fisher College of Business, and he **participated in** the decision to terminate Plaintiff's employment. *Id.* at ¶ 8.
- Unknown University Personnel were directly responsible for **investigating** Plaintiff's conduct or **participating in** the University's decision to terminate his employment. *Id.* at ¶ 9.
- In September 2021, Defendant Lount informed Plaintiff that the FCOB Human Resources Department required him to **investigate** the content of Plaintiff's educational speech and classroom discussions. Defendant Lount completed a phone interview with the Plaintiff at this time. *Id.* at ¶ 34.
- In February 2022, Defendant Lount informed Plaintiff that his employment contract would not be renewed. *Id.* at ¶ 37.
- In May 2022, Defendant Tepper said to Plaintiff during a final exit discussion, that "Lount did not know what he was doing regarding addressing the issue in a constructive and successful manner." Tepper said, "Lount just fell apart and let HR take over and do whatever they wanted to do." *Id.* at ¶ 38.

13

As such, Plaintiff has alleged that the Defendants were aware of the alleged misconduct and participated in the misconduct. *See Rideout v. Shelby Twp.*, 691 F. Supp. 3d 816, 834 (E.D. Mich. 2023) (holding that Plaintiff's allegations were sufficient to survive a motion to dismiss where the Plaintiff alleged that the Defendants were aware of the alleged misconduct and participated in it).

G. **Defendants Are Not Entitled to Qualifed Immunity**.

No qualified immunity exists here, as qualified immunity does not apply when a plaintiff alleges that (1) state officers violated a statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time of the offense. *Novak v. City of Parma, Ohio,* 33 F.4th 296, 303 (6th Cir. 2022), *cert. denied*, 143 S.Ct. 773 (2023).  "[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Nevertheless, Defendants assert that they are entitled to qualified immunity as to Plaintiff's claims. To defeat the affirmative defense of qualified immunity, a plaintiff must demonstrate that (1) the defendant violated a constitutional right; and (2) the right was "clearly established." *Habich v. Wayne Cnty.*, 2023 U.S. App. LEXIS 8868, at *3 (6th Cir. 2023).

Plaintiff's allegations satisfy the first prong of the qualified immunity analysis. The first prong of the qualified immunity analysis is met when a First Amendment retaliation claim is adequately alleged. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 232 (6th Cir. 2005). As described above, Plaintiff adequately alleged a First Amendment retaliation claim, thus there is evidence to support Plaintiff's claim that Defendants violated a constitutional right. Although "[c]ourts generally avoid ruling on the clearly established prong of the qualified immunity inquiry at the dismissal stage," Plaintiff also satisfied the second prong of the qualified immunity analysis.

*Kyrkanides v. Capilouto*, No. 5:21-cv-00270-GFVT, 2022 U.S. Dist. LEXIS 162908, at *21-22 (E.D. Ky. Sep. 8, 2022).

This Circuit has denied qualified immunity based on facts that are similar to the present case. In *Hardy v. Jefferson Cmty. Coll.*, a student complained about a college professor following a classroom discussion examining the impact of disparaging words, such as the "N" word and "bitch." *Id.* at 675. The Plaintiff's teaching contract was subsequently not renewed. *Id.* On a motion to dismiss, the individual defendants argued that they were entitled to qualified immunity. *Id.* at 682. On appeal, this Circuit affirmed the district court's denial of the defendants' motion, holding that the professor's right to speech on such matters was clearly established. The court stated, "[f]or decades it has been clearly established that the First Amendment tolerates neither laws nor other means of coercion, persuasion, or intimidation 'that cast a pall of orthodoxy' over the free exchange of ideas in the classroom." *Id.* at 682. Furthermore, the court opined that "[g]iven this court's in-depth analysis of the protections available to one using the "N" word in an academic context, reasonable school officials should have known that such speech, when it is germane to the classroom subject matter and advances an academic message, is protected by the First Amendment." *Id.* at 683.

Defendants argue with no support that "it is abundantly clear that no violation of Plaintiff's clearly established constitutional rights can be found under any set of facts alleged in the Complaint." This argument is belied by simply reading the Third Amended Complaint. Plaintiff clearly alleges that he was engaged in an academic position, that he delivered academic and course content to students in a classroom, that such academic speech was protected by the First Amendment, and that Defendants through their investigation and termination of his employment violated Plaintiff's First Amendment rights.  Defendants, of course, will have the opportunity to

argue at the summary judgment stage that Plaintiff failed to present sufficient evidence to allow a jury to reasonably conclude that his termination was indeed discriminatory or retaliatory; however, that is not the question at this pleading stage. Plaintiff has met his burden to allege a plausible set of facts that would render qualified immunity inapplicable. Defendants' Motion should be denied.

### III. <u>CONCLUSION</u>

Plaintiff Third Amended Complaint is "plausible" and well-plead. Defendants' Motion is baseless and ignores the clear factual pleadings in Plaintiff's Third Amended Complaint. Defendants' motion should be denied in its entirety.

Respectfully submitted,

<u>/s/ *Daniel P. Petrov*   </u>
DANIEL P. PETROV (0074151)
dpetrov@tpgfirm.com
SARAH E. WYSS (0100278)
swyss@tpgfirm.com

THORMAN PETROV GROUP CO., LPA
20046 Walker Road
Shaker Heights, Ohio 44122
Tel. (216) 621-3500
Fax (216) 621-3422

*Attorneys for Plaintiff Mark Sullivan*

16

## CERTIFICATE OF SERVICE

I certify that on September 3, 2024, I served a copy of this document upon all counsel of record in this case by filing it with the Court's electronic filing system.

/s/ *Sarah E. Wyss*

Counsel for Plaintiff