**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Mark Sullivan,**

     **Plaintiff,**

     **v.**

**The Ohio State University, et al.,**

     **Defendants.**

**Case No. 2:23-cv-3174**

**Judge Michael H. Watson**

**Magistrate Judge Jolson**

## <u>OPINION AND ORDER</u>

This matter is before the Court on the parties' cross-motions for summary judgment. ECF Nos. 87, 88. The motions are fully briefed and ripe for consideration. ECF Nos. 91–94. For the reasons below, the motions are **DENIED**.

### I.    STATEMENT OF FACTS

This case is about a former Senior Lecturer at The Ohio State University ("OSU") who used a racial slur during one of his classes. Mark Sullivan ("Plaintiff") was a Senior Lecturer in the Management Human Resources Department ("MHR Department") of the Fisher College of Business ("FCOB") at OSU from August 16, 2015, through the expiration of his teaching contract on May 14, 2022. Lount Decl. ¶ 4, ECF No. 88-2. Robert Lount ("Lount") is a Professor in the FCOB and previously served as the Chair of the MHR Department from 2019 through 2023. *Id.* ¶ 1. In his role as Chair, Lount supervised Plaintiff and reviewed Plaintiff's teaching performance and contract

renewal. *Id.* ¶¶ 2–5. Anil Makhija ("Makhija," and, together with Lount, "Defendants") is also a Professor in the FCOB and previously served as Dean of the FCOB from 2014 through 2024. Makhija Decl. ¶ 3, ECF No. 88-1. As Dean, Makhija managed all staff and faculty within the FCOB, including contract renewals for Senior Lecturers. *Id.* ¶ 4.

## A.    Faculty Performance Surveys

Lount's role as Chair of the MHR Department included reviewing faculty performance. Lount Decl. ¶ 5, ECF No. 88-2. Faculty performance is primarily evaluated using surveys called Student Evaluations of Instruction ("SEI"). *Id.* Students complete SEIs for faculty members near the end of each semester and prior to receiving their final grade for a course. *Id.* In completing the SEIs, students are asked ten individual questions about the faculty members' performance and substance of the course. *Id.* The first nine questions ask students to select one of five responses, "starting with (1) strongly disagree, (2) disagree, (3) neutral, (4) agree, and (5) strongly agree. The tenth question on an SEI survey asks '[o]verall, I would rate this instructor as.' Corresponding with numbers 1–5, students responding to question ten can select poor, fair, neutral, good, or excellent." *Id.* OSU expects Senior Lecturers and non-tenured faculty to consistently score 4s or higher on their SEIs. *Id.* ¶ 6. OSU considered scoring in the 3s as "unsatisfactory performance" and scoring in the 2s as "catastrophically bad performance." *Id.* Faculty members received SEI scores

Case No. 2:23-cv-3174                                          Page 2 of 20

for individual courses as well as a score based on all the courses they taught in a given semester. *Id.*

## B.     Spring 2021 Recommendation for Non-Renewal

Plaintiff's teaching contract was set to expire in or around Spring 2021. *Id.* ¶ 7. Around February 2021, before any allegation of protected conduct, Lount raised concerns with Plaintiff's teaching performance and lack of professional judgment. *Id.* ¶ 18. Specifically, Plaintiff taught thirty different classes from Spring semester 2018 through Fall semester 2020, and he "received a sub-4.0 SEI score in seven different classes, or 23% of the classes he taught."[1] *Id.* ¶ 7. Notably, of those seven classes with low SEI scores, four of those scores came from four different Crucial Conversations courses over that time period.[2] *Id.* ¶ 8. Lount addressed his concerns with Plaintiff's teaching performance in Plaintiff's 2021 Annual Review, and he specifically indicated that Plaintiff had some SEI scores that were "quite low" and that "[t]eaching evaluations in the 2s are concerning and atypical for a senior lecturer." Sullivan Dep. Ex. 11, ECF No. 82-13 at PAGEID ## 708–09.

In addition, in August 2020, Plaintiff informed Lount that he needed a replacement teaching assistant ("TA"). Lount Decl. ¶ 8, ECF No. 88-2.

---

[1] The FCOB's Senior Lecturers are evaluated for renewal of their teaching contracts based on a three-year look back period. Makhija Decl. ¶ 7, ECF No. 88-1. So, Plaintiff's SEI scores from Fall 2018 through Fall 2020 were considered in his Spring 2021 teaching contract renewal discussion. *Id.*

[2] "[Crucial Conversations] was a course to help people navigate challenging discussions they may have in the workplace as it relates to their careers." Lount Dep. 136:21–24, ECF No. 87-2.

Case No. 2:23-cv-3174                                                                  Page 3 of 20

Subsequently, Lount hired a TA for Plaintiff and provided him with the new TA's contact information. *Id.* Plaintiff asked Lount if he could interview the TA, but Lount stated that an interview was unnecessary because the TA was already hired. *Id.* Nevertheless, Plaintiff invited the TA to Plaintiff's home for an interview. *Id.* The TA, however, arrived at Plaintiff's home disoriented and intoxicated, and Plaintiff called emergency services. *Id.* This incident caused Lount to question Plaintiff's professional judgment. *Id.*

Lount recommended non-renewal of Plaintiff's teaching contract in Spring 2021 to Makhija (among others) due to Plaintiff's low SEI scores and lack of professional judgment. *Id.* ¶ 18; Makhija Decl. ¶ 7, ECF No. 88-1. Because it would have been difficult to hire a replacement Senior Lecturer due to the COVID hiring freeze, however, Lount "reluctantly agreed," as a compromise, to offer Plaintiff a one-year contract renewal for the 2021–2022 academic year (as opposed to the two-year and three-year contracts that Senior Lecturers typically receive). Lount Decl. ¶¶ 9, 18, ECF No. 88-2.

## C. Fall 2021 Racial Slur Complaint and OIE Investigation

In the Fall semester of the 2021–2022 academic year, Plaintiff again taught two sections of Crucial Conversations. Sullivan Dep. 143:13, 149:15, ECF No. 87-6.

On September 28, 2021, Plaintiff led a class exercise based upon a transcript from a police interrogation of Whitey Bulger, a mafia boss. Sullivan Dep. 149:25–150:15, ECF No. 87-6. Because it appeared in the original

transcript, Plaintiff used a racial slur (the N-word). Lount Dep. 135:7–25, ECF No. 87-2. Plaintiff intended to use the racial slur to help students consider how they would react to such hate speech in a professional environment. Sullivan Dep. 150:20–151:5, ECF No. 87-6. He had been using the same transcript (with the N-word) every time he taught this course, but Defendants did not know that until September 2021. *Id.* 149:12–20; Lount Dep. 138:10–14, ECF No. 87-2. He used it for both sections in the Fall 2021 semester. Sullivan Dep. 159:17–25, ECF No. 87-6.

Shortly thereafter, Lount learned that some students were upset that Plaintiff had used a racial slur in one of his Crucial Conversations classes, and OSU Human Resources asked him to discuss the matter with Plaintiff. Lount Decl. ¶ 19, ECF No. 88-2. When Lount and Plaintiff discussed the incident, Lount stated to Plaintiff, "I understand . . . that's part of your course. Just continue doing that. It sounds fine and reasonable to me. Just carry on." Sullivan Dep. 72:5–8, ECF No. 82-2. Although Makhija also learned of the complaint, it does not appear that Makhija discussed it with Plaintiff. In connection with his deposition, however, Makhija agreed that the use of the slur for educational purposes was not problematic. Makhija Dep. 112:3–5, ECF No. 87-3 ("As I understood it, he was using these [racial slurs] for educational purposes, which is perfectly fine.").

A few weeks later, in October 2021, another FCOB professor and Chair of FCOB's Diversity and Inclusion, Cynthia Turner, informed Lount that her students

brought up the racial slur incident and other concerns with Plaintiff in her own class. Plaintiff's Dep. Ex. 33, ECF No. 82-26 at PAGEID ## 1068–69.

Subsequently, a student reported discrimination against Plaintiff to OSU's Office of Institutional Integrity ("OIE"),[3] alleging that Plaintiff had used a racial slur in his Crucial Conversations class. Johnson Decl. ¶¶ 11–12, ECF No. 88-7. OIE staff investigated the student complaint and determined that Plaintiff did not break any OSU policy, so OIE took no disciplinary action. *Id.* ¶ 15. Instead, OIE staff met with Plaintiff for a non-disciplinary, educational conversation in January 2022. *Id.* ¶¶ 15–19. During that conversation, OIE staff told Plaintiff to consider ways "to change his behavior so that the impact of his actions aligns more closely with his intent." Ex. 12, ECF No. 87-5 at PAGEID # 2194.

Defendants, who do not work for OIE, did not initiate or conduct either the OIE investigation or the educational conversation. Johnson Decl. ¶ 17, ECF No. 88-7; Makhija Decl. ¶ 10, ECF No. 88-1. And Plaintiff testified that neither Defendants (nor anyone else) told him that he could not use the racial slurs as part of his classroom curriculum. Sullivan Dep. 193:15–21, ECF No. 82-2.

**D.    Spring 2022 Non-Renewal Decision**

Plaintiff's one-year renewal contract was set to expire in May 2022. Lount Decl. ¶ 4, ECF No. 88-2. In or around December 2021 or January 2022, Lount received Plaintiff's SEI scores for the Fall 2021 semester and learned that

---

[3] Prior to 2025, OSU's Civil Rights Compliance Office ("CRCO") was named OIE. Johnson Decl. ¶ 3, ECF No. 88-7. For clarity, the Court will refer to CRCO as OIE.

Plaintiff had received a composite SEI score of 3.18 in one of his Crucial Conversations courses.[4] *Id.* ¶ 20.

Lount again recommended to Makhija (among others) to not renew Plaintiff's teaching contract. *Id.* ¶ 22. Lount based his recommendation on "[Plaintiff] continuing to have volatile SEI scores, [Plaintiff] displaying poor judgment in assigning his own book to classes with unrelated topics, [Lount's] lingering concerns for [Plaintiff's] poor judgment regarding the TA incident, and [Plaintiff] disregarding [FCOB's] grading distribution policy." *Id.* An additional factor in Lount's recommendation was that "[Plaintiff] had the highest rate of sub-4.0 SEI scores in the MHR Department from spring semester 2018 through spring semester 2022 among 100% FTE Senior Lecturers." *Id.* ¶ 7. Lount specifically averred that he never considered the racial slur incident in making his recommendation. *Id.* ¶ 23.

Moreover, Makhija agreed with Lount's recommendation to not renew Plaintiff's teaching contract. Makhija Decl. ¶ 12, ECF No. 88-1. The 3.18 SEI score was a "contributing factor" for the ultimate non-renewal decision. Lount Dep. 178:4–6, ECF No. 87-2. But Defendants maintain that the racial slur incident in Plaintiff's Fall 2021 Crucial Conversations course was not linked to their non-renewal decision. Makhija Decl. ¶ 13, ECF No. 88-1; Lount Decl. ¶ 23, ECF No. 88-2.

---

[4] Plaintiff received a 4.13 SEI score in one class and a 3.18 in the other class. ECF No. 82-24 at PAGEID # 1060–61.

Plaintiff was notified in February 2022 that his teaching contract would not be renewed for the 2022–2023 academic year; he taught his final class at OSU in May 2022. McClendon Decl. ¶ 8, ECF No. 88-4; Sullivan Dep. 52:20–22, ECF No. 82-2.

## II.  PROCEDURAL HISTORY

Plaintiff filed this action in September 2023, alleging First Amendment retaliation under 42 U.S.C. § 1983 against Defendants[5] for failing to renew his teaching contract based on his protected speech (i.e., use of the racial slur for educational purposes). Third Am. Compl., ECF No. 50 at PAGEID ## 229–32. Defendants moved to dismiss Plaintiffs' Third Amended Complaint, and the Court denied their motion. ECF Nos. 53, 63. The parties now cross-move for summary judgment. ECF Nos. 87, 88.

## III.  STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[5] The Court previously dismissed Plaintiff's claims against OSU and individual Defendants Bennett Tepper, Jennifer McClendon, and William Wattercutter. See ECF Nos. 32, 79, 83. In addition, Plaintiff brought claims against "Unknown University Personnel 1–5." Third Am. Compl., ECF No. 50. To date, Plaintiff has not effected service on "Unknown University Personnel 1–5," pursuant to Federal Rule of Civil Procedure 4, and the time to do so has passed. Thus, Plaintiff's claims against "Unknown University Personnel 1–5" are **DISMISSED**.

Case No. 2:23-cv-3174                                    Page 8 of 20

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citation omitted). Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

Where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, the party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted); *Alpha Enters. v. Tomato Land Display Sys.*, 92 F. Supp. 2d 733, 736

(S.D. Ohio 2000).  In other words, "[w]hen the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden." *Ely v. Dearborn Heights Sch. Dist. No. 7*, 150 F. Supp. 3d 842, 849–50 (E.D. Mich. 2015).

Here, the parties have filed cross-motions for summary judgment.  In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).  "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *John v. State of La. (Bd. of Trs. for State Coils. & Univs.)*, 757 F.2d 698, 705 (5th Cir. 1985)).  The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248.

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  The Court may rely on the parties to call attention to the specific portions of the record that

Case No. 2:23-cv-3174                                          Page 10 of 20

demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## IV.   ANALYSIS

Plaintiff argues that he is entitled to summary judgment on his First Amendment retaliation claim but that the damages[6] award should be reserved for trial. ECF No. 87.  Defendants, conversely, contend that three bases warrant granting summary judgment in *their* favor: (1) Plaintiff has not established the causation element for his First Amendment retaliation claim; (2) even if he did, Defendants would have taken the same action without the protected speech; and (3) Defendants are entitled to qualified immunity.  ECF No. 88.  Because there are several disputes of material fact, neither party is entitled to summary judgment.

### A.   First Amendment Retaliation

To prove a First Amendment retaliation claim, Plaintiff must show: (1) he engaged in protected speech; (2) Defendants took an adverse action against him; and (3) there is a causal connection between the protected speech and the adverse action. *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024) (citing *Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir. 2024)).

---

[6] Plaintiff brought his claims against Defendants in both their official and individual capacities.  Third Am. Compl., ECF No. 50.  As the Court decided in its January 2025 Opinion and Order, ECF No. 63, Plaintiff may pursue monetary damages under his individual-capacity claims and prospective injunctive relief regarding his request for reinstatement under his official-capacity claims against Defendants.

Here, Defendants concede that Plaintiff has established the first two elements—his use of the racial slur for an educational purpose was protected speech, and the non-renewal decision was an adverse action. ECF No. 88 at PAGEID # 2703. But Defendants draw the line at the third element, arguing that Plaintiff lacks sufficient evidence to support causation. *Id.*

Regarding causation, "[s]ubjective motivation appropriately enters the picture on a retaliation claim because our concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citation omitted). As such, on summary judgment, courts apply a burden-shifting framework: (1) the plaintiff must first establish that his protected speech was a motivating factor in the defendant's adverse action, and (2) even if the plaintiff makes this showing, the defendant can prevail on summary judgment if they show that they would have taken the same action without the protected activity. *Thomas v. Eby*, 481 F.3d 434, 44–42 (6th Cir. 2007).

**1.      Plaintiff has submitted sufficient evidence for a reasonable jury to find that his speech was a motivating factor in Defendants' non-renewal decision.**

Plaintiff first argues that temporal proximity supports causation. In Plaintiff's view, the non-renewal decision came four weeks after the OIE educational conversation about his use of a racial slur, which must mean that his use of the racial slur motivated the non-renewal decision. ECF No. 87-1 at PAGEID ## 1728–29. But temporal proximity concerns the amount of time

between the protected action and the adverse action. *See Spencer v. City of Catlettsburg*, 506 F. App'x. 392, 393 (6th Cir. 2012) ("[T]he court looks at the length of time between the protected speech and the adverse action to determine whether the temporal proximity between the events is significant enough to constitute evidence of a causal connection in establishing a case of First Amendment retaliation"). Thus, the Court considers the length of time between Plaintiff's protected speech (September 2021) and the non-renewal decision (February 2022)—which is five months—rather than the time between the educational conversation and the non-renewal decision. Lount Decl. ¶¶ 19, 22, ECF No. 88-2.

Temporal proximity alone may be used to establish a prima facie case where there is less than five months between the protected activity and adverse action. *Tamm v. Nerad*, No. 24-1155, 2025 WL 2674302, at *6 (6th Cir. Sept. 18, 2025) (citation omitted). Here, Plaintiff has shown only five months passed between the protected speech and non-renewal decision, so temporal proximity may be used to support causation here.

In addition to temporal proximity, Plaintiff also offers several material facts from which a reasonable jury could determine that his protected speech was a motivating factor in Defendants' non-renewal decision.

First, Plaintiff argues that Lount's admission that the 3.18 composite SEI score for one of Plaintiff's Fall 2021 Crucial Conversations classes was a "contributing factor" to the non-renewal decision equates to an admission that the

Case No. 2:23-cv-3174                                                    Page 13 of 20

*racial slur* was a contributing factor to the non-renewal decision. ECF No. 87-1 at PAGEID # 1725; Lount Dep. 178:4–6, ECF No. 87-2. That is, because the SEI score stemmed from the same course in which Plaintiff made the protected speech, Plaintiff contends that Defendants' reliance on the SEI score suggests that the protected speech was at least a motivating factor for the non-renewal. *Id.*

Although the Court is not persuaded that this is a "direct admission," a reasonable factfinder could interpret Lount's statement in either party's favor. Plaintiff received a 3.18 SEI score in one Crucial Conversations course based on his students' evaluations of his performance across the entire semester. Lount Decl. ¶ 8, ECF No. 88-2. A reasonable jury could infer that this low SEI score reflected his student's OIE complaint for his use of the racial slur in class— specifically, a jury could infer that (1) Plaintiff's student(s) gave him a low SEI score *because of* his use of protected speech, and (2) Defendants knew that the Fall 2021 Crucial Conversation SEIs were based, at least in part, on the student's (or students') reaction to Plaintiff's protected speech.

On the other hand, as Defendants contend, nothing within the SEI score (or anything else in the record) inherently suggests that the students awarded that score based on Plaintiff's protected conduct. Indeed, the evaluations were submitted by only a portion of the students enrolled in the classes and were anonymous, and the Registrar's SEI report did not contain narrative responses. ECF No. 82-24. Lount also avers that he neither knew "at the time, nor

Case No. 2:23-cv-3174                                      Page 14 of 20

investigate[d] whether the 3.18 SEI score was received in the same Crucial Conversations class ["] from which the OIE student complaint arose. Lount Decl. ¶ 20, ECF No. 88-2. So, a reasonable jury could also side with Defendants and conclude that Defendants' reliance on the low SEI score was not a veiled attempt to retaliate against Plaintiff for his protected speech.

Because there is a genuine dispute of material fact as to how much (if at all) the racial slur played into the Fall 2021 Crucial Conversations 3.18 SEI score, this issue is better reserved for a jury to decide.

Second, Plaintiff argues that the OIE investigation and educational conversation "reveal[ ] institutional efforts to influence and chill his speech." ECF No. 87-1 at PAGEID # 1728. As to the OIE investigation, Plaintiff points to the manner in which the racial slur incident set off an uproar within the FCOB leading up to the OIE Investigation against him—(1) Lount was aware that students in Plaintiff's Crucial Conversations course were upset about the racial slur used in class; (2) OSU Human Resources directed Lount to ask Plaintiff about the racial slur incident; (3) another FCOB professor and Chair of FCOB's Diversity and Inclusion, Cynthia Turner, informed Lount that her students brought up the racial slur incident in her own class; and (4) an OIE student complaint was filed. Lount Decl. ¶ 19, ECF No. 88-2; Sullivan Dep. Ex. 33, ECF No. 82-26 at PAGEID ## 1068–69. Although Defendants maintain that they neither initiated nor conducted the OIE investigation, Johnson Decl. ¶ 17, ECF No. 88-7; Makhija Decl. ¶ 10, ECF No. 88-1, a reasonable jury could find that the sequence of events leading

up to and including the OIE investigation into the protected speech support causation.

As to the OIE educational conversation, Plaintiff frames the conversation as a "reprimand to [Plaintiff's] classroom speech." ECF No. 87-1 at PAGEID # 1728. Indeed, during the educational conversation, OIE told him to consider ways "to change his behavior so that the impact of his actions aligns more closely with his intent." Plaintiff's MSJ Ex. 12, ECF No. 87-5 at PAGEID # 2194. Even though Defendants maintain that they were not involved in the OIE educational conversation and that OIE did not reprimand Plaintiff's conduct, a reasonable jury could still find that the educational conversation was a motivating factor in the non-renewal decision where Plaintiff was encouraged to change his behavior (i.e. using a racial slur for an educational purpose).

At bottom, Plaintiff has established that temporal proximity along with other facts supports a reasonable inference of retaliatory motive to support causation.

### 2. There is a genuine dispute of fact as to whether Defendants would have taken the same action without Plaintiff's protected speech.

Because Plaintiff has presented sufficient evidence for the three elements of his First Amendment retaliation claim, the burden of persuasion now shifts to Defendants. At trial, "[a defendant] must show by a preponderance of the evidence that they would have terminated [a plaintiff] even had [he] not engaged in constitutionally protected activity." *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (citation omitted). But, on summary judgment, a

defendant has to clear "a substantially higher hurdle." *Id.* A defendant must point to evidence to meet their burden, and such evidence must be "so powerful that no reasonable jury would be free to disbelieve it." *Id.* Defendants have not cleared this high bar.

To be sure, Defendants argue that Plaintiff's teaching performance issues would have resulted in the non-renewal even if he had not made the protected speech. ECF No. 88 at PAGEID # 2709. Defendants explain that Lount espoused concerns about Plaintiff's low SEI scores in connection with his Spring 2021 contract renewal, several months *before* the protected speech occurred. Makhija Decl. ¶ 12, ECF No. 88-1; Tepper Decl. ¶ 8, ECF No. 88-3. In Plaintiff's 2021 annual review, Lount indicated that Plaintiff had some SEI scores that were "quite low" and that "[t]eaching evaluations in the 2s are concerning and atypical for a senior lecturer." Sullivan Dep. Ex. 11, ECF No. 82-13 at PAGEID ## 708–09. As stated earlier, "[Plaintiff] had the highest rate of sub-4.0 SEI scores in the MHR Department from spring semester 2018 through spring semester 2022 among 100% FTE Senior Lecturers." Lount Decl. ¶ 7, ECF No. 88-2. Because of Plaintiff's "volatile SEI scores and the TA incident," Lount recommended that Plaintiff's teaching contract not be renewed as early as Spring 2021. *Id.* ¶ 18. Defendants aver that the 3.18 Fall 2021 SEI score demonstrates that Plaintiff had not cured the concerns with his teaching performance. *Id.*; Makhija Decl. ¶ 7, ECF No. 88-1.

But the evidence in the record is not strong enough to warrant summary judgment. Although it is true that Plaintiff had some SEI scores in the 2s and 3s for individual classes during his tenure, most of his SEI scores were in the 4s for individual classes. *See generally* Sullivan Dep. Ex. 26, ECF No. 82-24. Similarly, though he had a 3.18 SEI score in one individual class in Fall 2021 (Crucial Conversations), Plaintiff scored 4.13 and 4.35 in his other individual classes for the Fall 2021 semester.[7] *Id.* at PAGEID ## 1059–61.

Given the evidence in the record, a factfinder could take a bird's eye view of Plaintiff's SEI scores to conclude that he had at least a satisfactory teaching performance. Conversely, a factfinder could take a worm's-eye view, zeroing in on the handful of low SEI scores, and conclude that Plaintiff's teaching performance was volatile, as Defendants submit. As such, this dispute of material fact warrants resolution by a jury, not summary judgment.

Aside from his teaching performance concerns, Lount also based his recommendation on Plaintiff's poor judgment—Plaintiff assigning his own book to classes with unrelated topics, the TA incident, and Plaintiff's disregard of the FCOB grading distribution policy. Lount Decl. ¶ 22, ECF No. 88-2. But Makhija testified that Lount did not bring up these issues during the Spring 2022 non-renewal discussion. Makhija Dep. 114:24–116:13, ECF No. 87-3. So, a

---

[7] Though distributed after the non-renewal decision, Plaintiff received a 4.66, 4.79, and 4.93 for his individual classes taught in the Spring 2022 semester—notably, the 4.93 SEI score was for Crucial Conversations. *Id.* at PAGEID ## 1062–64.

reasonable jury could likewise find that Lount's concerns with Plaintiff's poor judgment would not have led to non-renewal in the absence of Plaintiff's protected speech.

### 3.    Defendants are not entitled to qualified immunity.

Under the qualified immunity doctrine, public officials performing discretionary functions are immune to § 1983 individual-capacity suits unless they violate a "clearly established" statutory or constitutional right. *Jennings v. Bradley*, 419 F. App'x. 594, 597 (6th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (citation omitted).

Defendants argue that, because Plaintiff cannot show causation, there has been no constitutional violation, so "there is no necessity for further inquiry under a qualified immunity analysis" and they are entitled to qualified immunity. ECF No. 88 at PAGEID # 2712. But, as discussed above, Plaintiff has raised a genuine dispute of material fact as to causation. Likewise, there is a genuine dispute of material fact as to whether Defendants would have taken the same action in the absence of protected speech. So, Plaintiff has sufficient evidence in the record for a reasonable jury to conclude that Defendants violated Plaintiff's First Amendment rights.

Because Defendants do not raise any argument as to whether the constitutional right was clearly established and because the Court will not make their arguments for them, the Court finds that Defendants are not entitled to qualified immunity.

The Court therefore **DENIES** summary judgment to both parties.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, ECF No. 88, and Plaintiff's motion for summary judgment, ECF No. 87, are **DENIED**.

Plaintiff's claims against "Unknown University Personnel 1–5" are **DISMISSED**.

Plaintiff's First Amendment retaliation claim remains. Within **FOURTEEN DAYS** of this Opinion and Order, the parties **SHALL** jointly notify the Court whether they wish to mediate before trial. Should the parties wish the Undersigned or a member of his staff to perform the mediation, they must include a statement to that effect in the joint notice. If the parties advise the Court that they do not intend to mediate, the Court will schedule trial accordingly.

The Clerk shall terminate ECF Nos. 87 and 88.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT